CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
11/22/2022
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
        DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MARTIN J. WALSH,<br>   *Secretary of Labor, United States Department of Labor*,<br><br>                     *Plaintiff*,<br><br>   v.<br><br>MICROGEM US INC., *et al*.,<br><br>                     *Defendants*. | Case No.: 3:22-cv-00069<br><br>MEMORANDUM OPINION<br>& ORDER<br><br>Judge Norman K. Moon |

The U.S. Secretary of Labor filed this action and a Motion for a Temporary Restraining Order on the evening of November 16, 2022. *See* Dkts. 1–3. The thrust of the Secretary's filing is that for months Defendants failed to pay their employees minimum wage or overtime wages required by the Fair Labor Standards Act ("FLSA"). The Secretary argues that a TRO is necessary to force MicroGEM to comply with the FSLA, and to ensure that any MicroGEM goods made by employees who weren't paid lawful wages—i.e., "hot goods"—should be stopped from entering the stream of commerce. For the following reasons, the motion at this time is denied.

## Background

In their TRO motion, the Secretary asserted that Defendants MicroGEM and several of its executives (Jeff Chapman, Brad Neilly, Sr., and Thomas Moran), should be enjoined "from placing 'hot goods' into the stream of commerce, failing to pay employees minimum wage and

failing to pay employees time and a half compensation for overtime hours worked." Dkt. 3 at 1. The Secretary asserted that a TRO was "necessary to halt Defendants' ongoing violations of the [FLSA], which are harming their employees, their competitors, and the Secretary's ability to investigate." *Id.*

In support of the motion, the Secretary wrote that, "at least since August 31, 2022, numerous employees at MicroGEM had not been paid minimum wage and overtime compensation as is required by the FLSA." *Id.* at 3. At least 126 employees are in this situation. *Id.* at 2. The Department of Labor's Wage and Hour Division ("Wage Hour") was in communication with Defendants since October 14, 2022, but Defendants have "failed to make any payment of the back wages owed and/or ensure future compliance." *Id.*

The Secretary further asserted that a Wage Hour investigator at MicroGEM's "New Hampshire and Utah production facilities observed workers handling goods to be produced, transported, shipped and/or delivered to purchasers." *Id.* at 4. The Secretary included supporting declarations to substantiate these assertions. *See* Dkts. 3-1–3.3. Wage Hour investigators "made attempts to resolve this matter short of judicial intervention," including "notif[ying] Defendants on October 31, 2022, that the goods at issue were hot goods," "provid[ing] Defendants with information regarding the hot goods provision and the Secretary's role in its enforcement, and request[ing] that Defendants voluntarily restrain shipment of these goods in interstate commerce and pay back wages pursuant to the FLSA." Dkt. 3 at 10. A supporting declaration attested that several times between October 31, 2022, and November 7, 2022, Wage Hour "*requested that Defendants agree to comply* with the FLSA, and agree not to transport, offer for transport, ship, deliver, or sell in interstate commerce any of the goods produced in violation of the FSLA." Dkt. 3-1 ¶ 21 (emphasis added); *see also id.* ¶ 22 (same); *id.* ¶¶ 22–24 (similar); Dkt. 3-3 ¶ 11 (same).

2

The Secretary sought a TRO "[t]o ensure compliance with the FLSA and to prevent the transport, offer for transport, ship, deliver, or sell in interstate commerce any of the goods produced in violation of the FLSA." Dkt. 3 at 4. The Secretary argued that "[w]ithout assurances from the Court that goods produced in violation of the FSLA will be—as Congress intended—banned from the marketplace, the Secretary cannot effectively enforce the law against Defendants, who continue to willfully violate it." *Id.* at 11. And the Secretary contended that, "[u]nless the hot goods are restrained from movement in commerce, there is the potential that the resulting unfair advantage will ultimately force complying employers out of business." *Id.* The Secretary also argued that any harm to Defendants "is merely pecuniary," in that they would "not be allowed to place into commerce the hot goods," and "may not receive money for the goods as long as they remain hot." *Id.* at 12. The Secretary concluded that it is "necessary—and well within the public interest—that the Court enter an order restraining Defendants from placing hot goods into commerce and withholding employees' overtime compensation until the Court can rule on the Secretary's request for a preliminary injunction." *Id.* at 13.

Although the Secretary sought a TRO and requested a hearing on the motion within several business days (before Thanksgiving), the Secretary did not assert that the TRO should issue without notice and did not provide required attestations for when a TRO may issue without notice. *See* Fed. R. Civ. P. 65(b)(1). In other words, the Secretary implicitly conceded that Defendants should get notice of the TRO request before its issuance.

On November 17, 2022—the day after the Secretary initiated this case and filed the motion for a temporary restraining order—this Court ordered the Secretary to "provide notice to Defendants of this suit, their application for a TRO and a hearing date and Zoom dial-in information, by close of business this day (November 17, 2022)." Dkt. 4 (oral order). The Court

further directed that, "[t]he Secretary shall further, by the close of business today, either file proof of such notice upon Defendants, or supplement the Secretary's filings so as to comply with Fed. R. Civ. P. 65(b)(1)'s requirements for issuance of TROs without notice." *Id.* The Clerk scheduled a Zoom hearing on the motion for November 22, 2022. Dkt. 5. However, the Secretary did not file a notice of service on Defendants by close of business on November 17, as required. Indeed, the Secretary only belatedly filed a certificate of service on the morning of the hearing, Monday, November 21. Dkt. 6. In that filing, the Secretary attested that the Defendants had been emailed the information on November 18 (the Friday before the hearing). *Id.*

On November 21, 2022, this Court heard argument on the Secretary's application for a TRO. *See* Dkt. 7 (minutes). Counsel for the Secretary were present as were several potential witnesses. Defendants Chapman and Neilley each participated in their individual capacities. They expressed a desire to seek counsel but that they had not had the opportunity to do so. No counsel appeared on behalf of MicroGEM. The third individual defendant (Thomas Moran) was not on the hearing. The Court heard testimony from Chapman and Neilley, and argument from the Secretary's counsel.

Legal Standard

A temporary restraining order "is intended to preserve the status quo until a preliminary injunction hearing can be held." *Hoescht Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999). As with a plaintiff seeking a preliminary injunction,[1] a plaintiff seeking a temporary restraining order must establish: (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the

---

[1] "The standard for granting either a TRO or preliminary injunction is the same." *Toure v. Hott*, F. Supp. 3d 387, 396 (E.D. Va. 2020) (quoting *Sansour v. Trump*, 245 F. Supp. 3d 719, 728 (E.D. Va. 2017)).

balance of equities tips in his favor," and (4) "that the injunction is in the public interest." *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Moreover, "*Winter* made clear that *each* of these four factors must be satisfied to obtain preliminary injunctive relief." *Henderson ex rel. NLRB v. Bluefield Hosp. Co.*, 902 F.3d 432, 439 (4th Cir. 2018).

Such relief constitutes an "extraordinary remedy" that is never awarded as of right. *See Winter*, 555 U.S. at 24. It is an "extraordinary and drastic remedy" that may only be awarded when a movant establishes by a clear showing entitlement to relief. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Restrictions on temporary restraining orders "reflect the fact that our entire jurisprudence runs counter to the notion of court action before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 438–39 (1974); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (describing the "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner") (internal quotation marks omitted).

## Discussion

The Court concludes, at this time and on this limited record, that the Secretary has not demonstrated a clear entitlement to the extraordinary remedy of a TRO. The Court will assume that the Secretary has shown a likelihood of success on the merits that MicroGEM failed to make required minimum wage and overtime payments. *See* Dkt. 3 at 10. It is on the latter three factors that the Secretary's showing presently falls short.

On the irreparable harm factor, the Secretary asserted that Defendants' goods must be "banned from the marketplace," and without this Court's involvement, "the Secretary cannot effectively enforce the law against Defendants, who continue to willfully violate it." Dkt. 3 at 11.

The Secretary further contended that, "[b]y producing and selling goods made under substandard labor conditions, the employer can compete unfairly and undercut those businesses who comply with the Act." *Id.* And, "[u]nless the hot goods are restrained from movement in commerce, there is the potential that the resulting unfair damage will ultimately force complying employers out of business." *Id.* The Secretary also cited as irreparable harms delays in minimum wages to low-income workers could threaten and impair ability to meet basic needs. *Id.* at 11–12.

All those proffered reasons could be good reasons to explain why irreparable harm might result if an employer continued to willfully violate the law and sought to introduce its hot goods into commerce. However, the uncontradicted evidence following the hearing is that Defendants have entered into an agreement with the Secretary's Wage & Hour Division, are in compliance with its provisions not to introduce hot goods into commerce and intend to remain in compliance with the terms of the agreement.[2] The evidence that Defendants merely "inquired" whether certain of their goods could be sold, does not support the Secretary's argument that there is any substantial risk Defendants will fail to comply and surreptitiously seek to introduce their hot goods into commerce. Moreover, the uncontradicted evidence is that MicroGEM's operations have been "suspended," and that no workers are presently working at the company at all. Therefore, there is no evidence that any workers are presently working (or will be working) in violation of any of the cited FLSA requirements (like overtime or minimum wage).

---

[2] The existence of an agreement between the parties was not a fact of which this Court was aware before the TRO hearing. The Secretary's filings mentioned several times that Wage Hour "*requested* that Defendants agree to comply with the FLSA, and agree not to transport, ship, deliver, or sell in interstate commerce any of the goods produced in violation of the FLSA." Dkt. 3-1 ¶ 21 (emphasis added); *see also id.* ¶ 22 (same); *id.* ¶¶ 22–24 (similar); Dkt. 3-3 ¶ 11 (same). However, the Secretary in its memorandum or supporting declarations did not describe that Defendants had concluded an agreement with the Secretary, which is a significant factual omission from the background of the dispute.

Accordingly, the evidence does not support a showing that irreparable harm will likely result if the Court doesn't issue the TRO. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (irreparable harm is that which is "actual and imminent," not "remote or speculative."). As the evidence in the limited record presently before this Court does not substantiate the Secretary's stated reasons for the existence of irreparable harm, the Court concludes that factor does not support issuance of a TRO.[3]

In addition, the balance of equities and public interest factors do not support issuance of a TRO at this time. The Court notes the lack of meaningful notice afforded Defendants before the Secretary requested that the Court hold a hearing on the motion and issue a TRO. Notably, this is not a case in which the Secretary had sought a TRO without providing notice to the Defendants. *See* Fed. R. Civ. P. 65(b)(1) (detailing requirements for issuance of a TRO without notice). The Court even afforded the Secretary the chance to amend its filing if the Secretary believed the TRO should issue without giving Defendants prior notice. *See* Dkt. 4. However, the Secretary has never argued a TRO should issue without notice.

To be sure, the Secretary did give Defendants *some* notice that this case and motion were filed, sending these materials and the dial-in information on Friday, November 18, 2022, for the Court's Zoom hearing scheduled for the following Monday, November 21, 2022, at 2:00 p.m.

---

[3] The Court notes the Secretary's argument that "once the Secretary establishes that an employer is producing, manufacturing, handling, and/or shipping, in interstate commerce, goods produced under labor conditions that violate the FLSA, no further showing of irreparable harm is required." Dkt. 3 at 11. However, this is not a case like the one the Secretary cites, in which the defendants "had violated the FLSA in the past *and knowingly broken promises to comply*." Dkt. 3 at 11 (citing *Chao v. Ladies Apparel Grp.*, 2002 WL 1217194 (S.D.N.Y. June 5, 2002)) (emphasis added). Moreover, even if the Secretary is right that "no further showing of irreparable harm is required" under those circumstances, Dkt. 3 at 11; *but see Winter*, 555 U.S. at 20, the Court need not resolve that issue because the Court also concludes that the other *Winter* factors, including the balance of the equities and public interest, do not support issuance of a TRO at this time.

*See* Dkt. 6 (certificate of service). However, that notice did not comply with this Court's order. *See* Dkt. 4. The Court had directed the Secretary to serve the Defendants by close of business on *Thursday, November 17, 2022*, which apparently was not done. *See id.* And while a day's delay in service in some cases may not be so significant,[4] here the Secretary had sought a TRO and a hearing within days of filing before the Thanksgiving holiday, and every day of notice to Defendants certainly mattered. Moreover, the fact that two Defendants did appear in their personal capacities (Mr. Chapman and Mr. Neilly) the next business day does not mean they had sufficient notice. They both articulated that they wished to seek advice of counsel but felt it important that they appear because of their respect for Court proceedings and to learn about the Secretary's request for a TRO.

On one hand, the equities support affording litigants like Defendants the opportunity to promptly seek advice of counsel before a TRO is issued against them, when they were given little pre-hearing notice. And on the other, the equities supporting issuance of the TRO are not as great as they might otherwise have been based upon the facts described above. Those include uncontradicted evidence that Defendants are complying with their agreement not to introduce their products into commerce; and evidence that MicroGEM's business operations are currently suspended, and that no one is working. Accordingly, the balance of equities would not support imposition of a TRO immediately but rather, affording Defendants some modest time to seek counsel and not prematurely resolve these issues on a truncated record and without input from Defendants through counsel.

---

[4] The Court understands that the Secretary's counsel has said that email delay caused the delay in their ECF notification of the Court's oral order, still, it is incumbent on counsel to learn what filings have been made to the public docket.

Finally, the Court considers the public interest. *See Winter*, 555 U.S. at 20. Certainly, the public interest is supported by giving effect to Congressional prohibitions on unlawful conduct. *See* Charles Alan Wright & Arthur R. Miller, 11A Fed. Prac. & Proc. Civ. § 2984.4 (3d ed.) (explaining that the public interest "may be declared in the form of a statute," and that "[a] federal statute prohibiting the threatened acts that are the subject of the litigation has been considered a strong factor in favor of granting a preliminary injunction"). And the Court notes the Secretary's argument that failure to pay minimum wage can have effects that are not just monetary in nature and can result in workers' inability to maintain minimum standards of living. However, again at this point and on this limited record, the evidence is that there is little risk of future violations of the FLSA. And the public interest also supports affording Defendants due process, specifically a meaningful opportunity to be heard and secure advice of counsel. *See Granny Goose Foods*, 415 U.S. at 438–39; *Eldridge*, 424 U.S. at 333. This factor does not weigh in favor of issuing the TRO either.

## Conclusion

For these reasons, at this time and on this limited record, the Court will **DENY,** ***without prejudice***, the Secretary's Motion for Temporary Restraining Order. Dkt. 2. The Court scheduled another hearing in about **two weeks** (**December 7, 2022**), to afford Defendants an opportunity to seek advice of counsel. The Secretary may file any further motion seeking preliminary relief by **November 30, 2022,** at **close of business**. The time period is expedited, but the Court notes that the Secretary was the party requesting another hearing as soon as possible. Defendants or their counsel shall file any opposition by **December 5, 2022**, at **close of business**. The Secretary may but does not have to file a reply by **December 6, 2022**, at **close of business**. The Secretary may raise any issues from its present motion in any later motion for preliminary injunction.

The Court will further **DIRECT** the parties to **meet and confer** between now and November 30, 2022, and, if the parties are able to reach any agreement with respect to modifications to this briefing schedule and hearing date, they shall promptly file a motion to that effect.

It is so **ORDERED**.

The Clerk of Court is directed to send a certified copy of this Memorandum Opinion and the Order to the parties.

Entered this **22nd** day of November, 2022.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE